IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROOFERS LOCAL NO. 30 COMBINED PENSION FUND; BOARD OF TRUSTEES, ROOFERS LOCAL NO. 30 COMBINED PENSION FUND; <br><br> and <br><br> MICHAEL O'MALLEY, in his fiduciary capacity, <br><br> Plaintiffs, <br><br> v. <br><br> D.A. NOLT, INC., <br><br> Defendant. | CIVIL ACTION <br><br> No. 09-1445 |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                       **AUGUST 25, 2010**

Presently before the Court is Plaintiffs Roofers Local No. 30 Combined Pension Fund, and its Board of Trustees and fiduciary Michael O'Malley's (collectively, the "Fund") Motion for Reconsideration of our decision granting Defendant D.A. Nolt Inc.'s ("Nolt") Motion for Summary Judgment and denying their own Motion for Summary Judgment for the reasons set forth below.

**I.      BACKGROUND**

Nolt is a corporation that performs commercial roofing work. Local 30 is a labor union. Nolt was also a member of the Roofing Contractors Association, a multi-employer association of commercial roofing contractors that exists primarily to conduct negotiations for collective

bargaining agreements with the Union on behalf of its members. We will not recite the facts here, but rather, refer to the facts as outlined in our June 18, 2010 decision. See Roofers Local No. 30 Combined Pension Fund v. D.A. Nolt, Inc., No. 09-1445, 2010 WL 2527885, at *1-3 (E.D. Pa. June 18, 2010).

## II. STANDARD OF REVIEW

"The United States Court of Appeals for the Third Circuit has held that the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Cohen v. Austin, 869 F. Supp. 320, 321 (E.D. Pa. 1994). Accordingly, a district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. Id. Federal courts have a strong interest in the finality of judgments, and motions for reconsideration should be granted sparingly. Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). Dissatisfaction with the Court's ruling is not a proper basis for reconsideration. Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

## III. DISCUSSION

### 1. The Inclusion of Forfeitable Benefits in the Calculation of Vested Benefit Liabilities

The Fund asserts that the "Court takes a horrendous misstep in its ruling on the nonforfeitability of early retirement benefits, without apparent apprehension of the impact of its decision on the Pension Benefit Guaranty Corporation (PBGC) guaranty program and thousands of people whose pension benefits will only be provided by that program." (Pls.' Mot. Recons. at

4.) The Fund further claims that:

> In holding that the retirement benefits do not become 'nonforfeitable" until the participant has satisfied both the retirement age and service requirements for early retirement, the Court voids the existing PBGC guarantee of the deferred early retirement benefits for thousands of participants. It places the PBGC personnel who have administered the program in that fashion for decades at risk of the wrath of the Comptroller General and associated personal liability and bankruptcy for misuse of government trust funds established under 29 U.S.C. § 1305.

(Id.)

As noted above, we will grant a motion for reconsideration only for the (1) availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. Here, the Fund has offered no new evidence that was previously unavailable or alleged that there was an intervening change in the controlling law. Thus, the Fund has to establish that we need to correct a clear error of law or prevent manifest injustice. The Fund, despite its "doomsday" predictions concerning the results of our decision, has failed to establish either.

It must first be noted that our decision simply affirms the decision of the Arbitrator in this case. Here, we only determined that the Fund in this factual scenario improperly treated the benefits at issue as "nonforfeitable" and, therefore, improperly included them in the valuation of the Fund's unfunded vested benefit liabilities ("UVBLs").[1] In his determination, the Arbitrator relied upon a series of Pension Benefit Guarantee Corporation ("PBGC")[2] Opinion Letters and the

---

[1] An employer's obligation to pay its proportional share of UVBLs is referred to as its withdrawal liability.

[2] Enacted in 1974, ERISA created the PBGC, a wholly-owned government corporation, to administer and enforce a pension plan termination insurance program, to which contributors to both single-member and multi-employer plans were required to pay insurance premiums. See 29

Third Circuit decision, Huber v. Casablanca Industries, Inc., 916 F.2d 85 (3d Cir. 1990). As we noted, Opinion Letters from the PBGC are entitled to "considerable weight." The Supreme Court, in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, stated that "[w]e have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." 467 U.S. 837, 844 (1984); see also Huber, 916 F.2d at 96-97.

In Huber, the Third Circuit upheld the arbitrator's determination that a lump sum benefit was not nonforfeitable under the MPPAA because death was a condition to entitlement, and had not been met in the facts of that case. The court specifically overturned the district court's reversal of the arbitrator on the basis that death was not a condition for entitlement to such benefits. Huber, 916 F.2d at 85. The Third Circuit held that its position was consistent with the position taken by the PBGC since 1975, as specifically codified by Congress in 1980 when it enacted the MPPAA. Id. at 104.

In its Motion for Reconsideration, the Fund has failed to cite any law that convinces this Court that we erred in relying on Huber and the PBGC Opinion Letters cited by the Arbitrator in determining that the Fund improperly treated the benefits at issue as "nonforfeitable" and, therefore, improperly included them in the valuation of the Fund's UVBLs.

   2.   **The Fund's Recalculation of Withdrawal Liability**

The Fund next challenges our determination that the Fund's retroactive increase to the

---

U.S.C. § 1302(a); see also Concrete Pipe, 508 U.S. 602 (1993); Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 636-37 (1990) (describing the organization and functions of the PBGC).

schedule of 2000 UVBLs was impermissible under the MPPAA. In a section of the Fund's brief headed "The Court Mistakenly Allows the Arbitrator to Overrule the Third Circuit and IRS," the Fund appears to argue that we: (1) erroneously bound the Fund to its first estimate of withdrawal liability; (2) denied it the opportunity of presenting alternative and inconsistent claims; and (3) failed to defer to IRS authority and misunderstood the nature of the Fund's tax filings. (Pls.' Mot. Recons. at 9.)

We first note that neither the Arbitrator nor this Court in our decision "bound" the Fund to its initial estimate of Nolt's withdrawal liability. In this litigation and before the Arbitrator, the Fund attempted to set forth four different withdrawal liability positions. It is apparent in our decision that we did not bind the Fund to any withdrawal date, but rather, rejected under the MPPAA the Fund's several withdrawal liability positions to retroactively increase the schedule for 1999 and 2000 UVBLs. The rationale for rejecting those positions was set forth in our decision, and we will not reiterate it here. Roofers Local No. 30 Combined Pension Fund, 2010 WL 2527885, at *26-33. Moreover, the Fund has failed to provide any new evidence in order for this Court to correct a clear error of law or to prevent manifest injustice to warrant granting its Motion for Reconsideration on this issue. See Cont'l Cas. Co., 884 F. Supp. at 943.

Next, the Fund asserts that we denied it the opportunity of presenting alternative and inconsistent claims. The Fund argues that the "Court adopts the Arbitrator's conclusion that arbitration is 'Heads I Win, Tails You Lose' game in which the Plan is unable to respond to employer claims by presenting evidence of alternative or inconsistent bases for liability." (Pls.' Mot. Recons. at 10.) This confusing and vague claim is baseless. As is evident in our decision, we painstakingly addressed all of the Fund's claims. The Arbitrator and this Court considered the

5

Fund's several withdrawal liability positions and rejected them. Curiously in arguing this claim, the Fund asserts that the "Arbitrator's analysis was laid to rest, after his opinion, by Judge Stengel's decision" in Penske Logistics LLC v. Freight Drivers and Helpers Local Union No. 557, No. 08-2051, 2009 WL 1383298, at *1 (E.D. Pa. May 14, 2009), aff'd 2010 WL 1583074 (3d Cir. Apr. 21, 2010). (Pls.' Mot. Recons. at 11-12.) We, however, fail to see how Penske has any relevance to the instant issue. Penske was a declaratory judgment action commenced by an employer challenging the sufficiency of a plan's statutory notice that withdrawal liability was due from the employer. The only issue before the court was whether a letter from the plan in that case was "sufficient to trigger ERISA's arbitration provision" under 29 U.S.C. §§ 1382 and 1399(b)(1). The court decided that the plan's determination that the employer owed withdrawal liability and notification to the employer of the amount and the payment schedule was all that ERISA required to trigger arbitration. Id. at 2. Because the question of the sufficiency of the withdrawal demand and whether statutory arbitration was proper were not issues, Penske does not constitute new evidence to support granting a motion for reconsideration.

Likewise, we dismiss the Fund's other vague assertions that our decision failed to defer to IRS authority. In our decision, we considered and addressed the IRS Technical Advise Memoranda ("TAM") materials submitted by the Fund and found that they had no relevance to this case. Roofers Local No. 30 Combined Pension Fund, 2010 WL 2527885, at *29-31. We rejected the TAMs and affirmed the Arbitrator for the reasons stated in our decision, including the fact that "PBCG Opinion Letters Nos. 90-2 and 94-5, read together, prohibit an after-the-fact change to unfunded vested benefit liabilities that will increase the withdrawal liability of a withdrawn employer." Id.

3.  **Pre-Demand Interest**

Lastly, the Fund asserts that our discussion of interest omits reference to "Ludlow Industries v. Pension Benefit Guaranty Corporation, 524 F. Supp. 155 (N.D. Ill. 1981), which found a right to interest on indistinguishable statutory language." (Pls.' Mot. Recons. at 18.)  In our decision, we relied on Huber.  In Huber, the Third Circuit addressed the issues of a fund's claim for both gap year interest[3] and pre-demand interest.  Initially, the parties in Huber went to arbitration and the arbitrator ruled that the fund's claims for both gap year interest and pre-demand interest were improper under the MPPAA.  The district court reversed.  On appeal, the Third Circuit concluded that gap year interest was properly payable, but held that pre-demand interest was improperly demanded.  Huber, 916 F.2d at 96-100.  Thus, we followed the Third Circuit precedent of Huber which specifically determined that the MPPAA does not allow for pre-demand interest.

Ludlow clearly has no bearing upon the Huber decision.  Ludlow involved completely different ERISA interest provisions that apply only in circumstances of a plan termination under 29 U.S.C. §§ 1362 and 1368.  524 F. Supp. 155.  The Fund also again attempts to assert that the Supreme Court's ruling in Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co., 513 U.S. 414 (1995) somehow negates the rationale of Huber.  However, as we discussed in our decision, Schlitz addressed only gap year interest, and thus, has no bearing on the issue of pre-demand interest.

We finally note again that the Fund's own actions indicate that it understood that pre-

---

[3]Gap year interest is interest from the end of the plan year preceding withdrawal to the end of the plan year in which withdrawal occurred.

demand interest is not permissible under the MPPAA and Third Circuit law. As the Arbitrator correctly stated:

> The fact that Mr. McKeough did not assess predemand interest in the initial May 2006 Demand and that the Trustees upheld that judgment also suggests that the Fund Actuary and the Trustees both understood that claims for predemand interest are neither customary nor permissible under the Act. If predemand interest was allowable at the time of the May 2006 Demand, one would have expected Mr. McKeough to have included it in his calculation and the Trustees to have included that claim as part of the May 2006 Demand.

(Arbitration Decision at 59.)

An appropriate Order follows.[4]

---

[4] Nolt has asked for an award of attorneys' fees in connection with the Fund's appeal of the Arbitration Award. An award of attorneys' fees in favor of a prevailing party is warranted, in connection with an appeal of an MPPAA withdrawal liability arbitration award, "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." See Dorn's Transp., Inc. v. Teamsters Pension Fund of Phila. and Vicinity, 799 F.2d 45, 48-49 (3d Cir. 1986). We, however, do not find that the Fund's appeal was frivolous, unreasonable or without foundation, and we reject an award of attorneys' fees.